Call our first case of the morning, Patricia Wright, Kevin West v. Owens Corning. Good morning. May it please the Court, my name is Alex Barnes from the law firm of Obermeyer, Redmond, Maxwell, and Hipple. Could you lift the microphone a little bit, please? Thank you. We represent the appellants Patricia Wright and Kevin West. We're the lead plaintiffs in a putative class action against Owens Corning that sought damages for defective shingles. I would like to request two minutes for rebuttal. That's granted. Thank you very much. In finding the existence of a claim under Section 1015 of the Bankruptcy Code based merely on the plaintiff's pre-confirmation purchase of shingles, the district court did not take direction from the cases which formed the foundation of this court's recent decision in Henry Grossman's. How do you distinguish Grossman's and the tests that we set forth in Grossman's? You take the Grossman's case relies on the following three cases, the Second Circuit case of Chautauqua, the Fifth Circuit case of LaMelle, and the Eleventh Circuit case in Epstein. Each of those cases either require or expressed a sensitivity for the need to find a pre-petition relationship of a sufficient quality. But isn't the relationship here the purchase of the shingles? Isn't that the? Your Honor, it's our position that the mere purchase of shingles in the context of this type of product does not constitute a sufficient enough relationship whereby the parties had some sort of anticipation of a future tort arising from a future and very speculative, remote defect and ultimate failure of the shingles. But anticipation, I mean, maybe anticipation comes into play when we say, okay, there was a claim, but from a due process standpoint, we couldn't require them to have filed at that point. But does the test even have an anticipation aspect to it? Those cases that we have cited in our brief certainly do require the parties to have either a sufficient contemplation or a fair contemplation of the potential for the contingency to arise. It needs to be part of the mindset of the parties at the time of the bankruptcy. Otherwise, the debtors, if they don't have the ability to conceive of this potential future tort, aren't in the position to provide adequate notice to potential victims because they're not able to identify any class of persons who may be harmed. But the New York Times notice says, you know, all persons having claims against Owens Corning. And the rights say, well, gee, we have Owens Corning shingled. You know, maybe we better file something or be on notice that if there's some problem here, we have a claim. Is that enough? Well, right and left in 2006, reading this New York Times notice that you made reference to. Of course, there's a difference in terms of the two cases, too. We've got the 1999 roof and then the 2005 roof. Correct. Correct. But in 2006, when notice of confirmation was being published, or earlier when notice of the bar date was being published, the prevailing standard in the Third Circuit was the Frenville case, which required that for a claim to be recognized in bankruptcy, there had to be an accrued state law claim in existence. Therefore, anybody who in 2006 or before, or prior to 2010, June of 2010, reading notice, which defines what a claim is, who had yet to have a state law accrued claim, would have no reason to conceive. That's a good argument, but to what extent did you actually make that argument in the district court? That was a matter that was fully briefed before the district court, both in the motion for summary judgment as well as the post-hearing memorandum that was submitted to the court. The district court treated that as a retroactivity. Yeah. Is it a retroactivity? Well, it goes hand-in-hand with retroactivity. First of all, as the court obviously is aware, the Harper decision requires new law to be applied retroactively when there's a pending matter of litigation. That's something that the plaintiffs here, the appellants, accept. However, the issue of notice cannot be applied retroactively. In other words, the notice given in 2006 was based on an understanding of claim that no one had a clue in 2006 that it would be any different, but it did change in 2010, but you really have to play by 2006 rules, is your point? That is exactly our point. That's more as a matter of due process or fairness than the... Correct. There are two points on appeal. One is that the court, the district court, did not correctly apply the Grossman standard because it did not take into account the need to examine the nature of the pre-petition relationship. And then the second point of our appeal is that the court's determination that due process could be satisfied merely by publication notice under the circumstances of the very unique circumstances of this case was in error. Where in Grossman do they talk about anticipation or the mindset, fair anticipation, sufficient or fair contemplation? What Grossman does, Your Honor, is the analytical framework of that case was that this court first examined the Frenville decision and looked at the rationale for the Frenville decision and decided that it did not place sufficient weight on the modifying words of 101-5. But let me reframe or restate my question. You said that these cases and Grossman mean that there has to be sufficient or fair contemplation and in the mindset of, it's a matter of the mindset of the claimant. It's not just the conduct of the debtor. Where in Grossman, what language are you relying on? We're relying on the reliance in Grossman's of the three circuit courts, LaMelle, Chautauqua, and the Piper decision. Well, I don't see that standard in those cases. So maybe you can help me. Actually, it looks like in Grossman's what it was was a composite, which you'll see toward the end of the opinion on page 127. I'm sorry, Your Honor. 127 and 125. Excuse me. 125. Irrespective of the title used, there seems to be something approaching a consensus among the courts that a prerequisite for recognizing a claim is that the claimant's exposure to a product giving rise to the claim occurred pre-petition, which only answers half of our case, even though the injury manifested after the reorganization. We agree and hold that a claim arises when the individual is exposed pre-petition to a product or other conduct giving rise to an injury which underlies a right to payment under the bankruptcy code. One could make an argument that while we talk about the pre-petition relationship test in Piper and the criticisms of that and the conduct test and the criticisms of that, that it looked like we were supposedly doing a composite, but in fact we may be just doing a conduct test. I don't know. I think it's subject to interpretation. I just don't see, well, the words that I'm pointing to aren't directly informed. Those words are informed by the underlying decisions that Grossman's relied upon. And, for example, if you take a look at the Second Circuit in Chautauqua, which involved a situation where the EPA sought response costs arising from CERCLA, and those response costs were determined to be pre-petition claims, regardless that they were incurred post-petition because they involved the release or threatened release of hazardous materials prior to the petition date. And Chautauqua determined that there needs to be some pre-petition relationship, and there needs to be Chautauqua looked at this relationship. I think, by the way, it's Chateau Gay. We were both bankruptcy lawyers. Chateau Gay. Excuse me. Chateau Gay looked at the specific relationship between. Right. And there they talked about contemplation in Chateau Gay. Right. They said that there needed to be sufficient contemplation of contingencies to bring most ultimately maturing payment obligations within the definition of claims. But it's interesting. We say what those cases said, and then we said what we said. But then after what Judge Amber quoted, we said that doesn't mean that they're necessarily discharged. Any application can't be divorced from fundamental principles of due process. And that's the case you're bringing. And that presumably, you know, I think that's where your argument should lie, that while we have a conduct test and a relationship test, we can't ignore due process fairness and whether a notice, which is a fundamental requirement, you know, precludes discharge of a claim. And I'm not sure what that means, that, you know, you have a claim, but we're going to preclude discharge on the basis of notice. But I think that's where your argument probably lies, in the due process realm. Your Honor, this Court in Grossman's expressed extreme concern about the due process implications of a discharge of a future court claim. Which takes us back to almost to an accrual test, or should. Or at least for a while. For a while, right. It's a constitutional impossibility that there was adequate notice by publication under the unique circumstances of this case. Yeah, you imagine, you know, even if you see the New York Times notice and you say, oh, gee, I have Owens-Corning shingles. Maybe I better figure what I should do. And you call a lawyer and the lawyer says, well, do you have any problem with the shingles? Not in the Third Circuit. No, not in the Third Circuit. I'm in Pennsylvania. Oh, well, you don't have a claim. Exactly. The cause of action hasn't accrued. And that hypothetical, in my mind, I view the plaintiffs here sitting in their Four Seasons room, looking at the paper, seeing the published notice, looking up at the roof and saying, oh, there are no leaks. I don't have any interests that could possibly be implicated in this bankruptcy. And then they move on to the small section. You're right. And that's, in effect, the basis for why Frenville went as it did. But it defined claim or interpreted claim much more narrowly than any other circuit. I mean, I'm not sure I can think of too many cases in the bankruptcy area from this circuit that have been criticized more than Frenville. And it was just wrong. I mean, unfortunately. But it was trying to do the right thing. Your best argument really is the one that affects your clients as to this case, and it relates, as Judge Rendell said, to due process here. Yes. We certainly recognize that Frenville was an outlier, and the rationale for Frenville was perhaps in conflict with the objections of the bankruptcy code. However, I think there are significant constitutional due process implications in terms of retroactively imposing the definition of a claim and then somehow magically providing retroactive satisfaction of due process under the circumstances. I think we're just going over the same ground. You're right. I have no further questions. Okay. All right. We'll hear from you on rebuttal. Thank you very much, Your Honor. Good morning. May it please the Court. Kara McCall on behalf of Owens Corning. You sort of know where we're coming from. Correct. When the district court considered due process, as she did, she looked at two things. Whether this was a known or unknown creditor, there was no dispute that they were unknown creditors. She then looked at Chemtron and said, under Chemtron, unknown creditors are entitled to publication notice. She thoroughly looked at the notices, as the bankruptcy court did as well, and determined that they were fair and adequate to provide reasonable notice. But put yourself in the position that your opposing counsel hypothetically gave you. You're sitting at home, don't see any leaks at the time, call your attorney and say, well, do I have to worry about this? Answer, no, not in the Third Circuit because they have this very different definition or interpretation of what is a claim. And if something happens in the next few years, you get a leak, you can make a claim because it's basically the accrual test. Okay? That's the way this was. That was the definition of claim in 06. The plan was confirmed. And then you're going to say afterwards, well, guess what? That really wasn't the definition because none of us knew it at the time, but the Third Circuit's done something else later on. Right, and too bad you're discharged. Yeah, too bad you're discharged. Well, two arguments, I think, on that. Number one, the retroactivity argument was, as you know, briefed very fully, considered very carefully, and based on the Harper decision, you apply the law at the time, even if the person was lying about an old law. But we apply Harper and we say that, indeed, they did have a claim. But will we have that claim discharged? No. We remanded it. Correct. As in Grossman's, we say there's a due process problem here. So we're applying Grossman's retroactivity and say, yes, you had a claim, but how can we say it's discharged when you had no way of protecting yourself, in effect? Well, because I don't think that's – in bankruptcy, claims are discharged all the time that are not allowed, that are rejected for whatever reason. But at some point, you sort of strive for fairness. And here, if you don't know what the rules – I mean, you have to know what the rules of the game are to play the game. And if you play the game according to the rules, somebody can't change them. You know, you can't take a sporting event and say, oh, the rules now change. I mean, in Grossman's, it precludes discharge, didn't it? The fairness in Grossman's, there was no discharge there? Well, it went down to – it was remanded and then the case settled. So there was never any determination on discharge. But, I mean, everything – it would be hard to follow Grossman's and not say that this claim should not, in all fairness, be. Well, I think the difficulty with the factors in that last paragraph of Grossman's are that they're all creditor-specific and they're subjective to each creditor, such that if that became the rule, a debtor would never have any certainty whatsoever that the publication notice and the efforts that he took to make sure that they were doing their best, the efforts that were approved by a bankruptcy court, he would never have any certainty that that would hold. You can flip it the other way. You did have certainty in this case. You, as well as they, believed that a claim was defined as interpreted by Friendville when you had the plan in 06. There was that certainty. So it's kind of hard for you to say that there's – argue uncertainty at this point from your perspective. You kind of got a windfall after the fact. Moreover – Well, I don't think we got a windfall. I mean, we had a reorganization plan and a confirmation order that said all claims are being discharged. But the claims as of that time were only those that had accrued. There's no way these two were discharged prior to Grossman's. Well, and also Grossman's technically, I mean, doesn't apply to the claim of – was it right? That it occurred pre-confirmation, post-petition. What I read to you, our holding talks only about pre-petition, and that's the West claim. But it doesn't deal with the right claim. Correct. But in terms of the language of discharge in both the code and in the plan, that says that claims that are existed at the time of confirmation are discharged. And that was the analysis that I think Judge Conte gave as well. Correct. That even though – I mean, that, you know, Grossman's, the factual scenario there, everything was pre-petition. But I think what Judge Conte was saying was that there was no reason to think the rules should be different when it's post-petition because the key language is the claims that exist at the time of confirmation. So what's the argument that we knew for certainty what the rules were in 06, and is it fair to say to these two people or whomever else there might be, that guess what, it's a, you know, it's a game of – it's a shell game. It's three-card money. Sorry. Well, I think that they complain a lot in their brief about the fact that if we had filed – if we had known, if we had received perfect notice, and we knew, and we had filed a claim, it would have been rejected. And their problem is that why should it now be discharged because it doesn't seem fair. But the issue is that claims are rejected all the time and still discharged. So I don't see – But they didn't have a claim as a matter of law. In 06. Didn't have a claim as a matter of law. Well, but they have a claim under Grossman's today. They had – I mean, under the law that we're dealing with today – I hear what you're saying, but I think we're focusing on these creditors' particular knowledge and what they knew, and I think that does a disservice to the debtor and the publication notes that it's put out. They knew what you knew in 06. In terms of what the law was? And what the – you're right. And what the law was in this circuit with respect to the interpretation of a claim. But I think the – but we're allowed to bring this argument today based on the law as it is today. I don't – and I don't think we're – You can apply this today to something going forward, no doubt about it. You can apply this today to something any time after June of 2010. But you've got that – I don't know, twilight zone, whatever you want to call it, that gray area that exists before, and this just seems to be a case of – I mean, of just fairness. I mean, now, the argument you might make is that the consequences of this are going to cause a whole heck of a lot of uncertainty for folks. And the response that I – would be, okay, for some cases for some period of time, but not a whole lot. You know, the fact that Frenvo allowed the accrual test didn't stop cases from filing in this circuit. So you can't say that it will dissuade cases from being filed. But anyway, going forward, the circuit's in line with everybody else. You're fine. Everything after June of 2010. But before that time, if you have a plan confirmed with a – everybody understanding what the definition of claim is, I think you have to ride with that understanding because no one could have foretold what the Third Circuit was going to do at some point in the future. But what do we do about Chemtron and the fact that Grossman said nothing about Chemtron and Chemtron says clearly – Chemtron doesn't take into consideration any of those issues you just mentioned. And they said, look, a debtor needs to know what it has to do. If a debtor does what it's supposed to do, i.e., contact directly the people it knows about, creditors it knows about, and send publication notice. But this is not imposing any harm or prejudice on you, other than what you already anticipated at the time of confirmation. You had certainty that these claims were not discharged. That's not true. We did not have that certainty because if someone knew about their claim, it was discharged. Oh, of course. But you had certainty that later defects were not going to be resolved and you were going to be liable for them. You were going to be liable for this roof because it hadn't accrued. Now you're getting kind of a bonus that, you know, if we were to apply it retroactively – not retroactively, but if we were saying that it's dischargeable, you're getting a bonus and a windfall that you didn't anticipate. So from a certainty standpoint, you know, you're not prejudiced by this at all. Any answer to your Chemtron point, which is a fair point, is that this Court and Bank and Grossman's notes that there's a due process concern that needs to be worked out. And Judge Conte took a very astute stab at it, but there's a real concern about fairness here. Well, I read that paragraph in Grossman's to be particularly concerned because this was an asbestos case and they hadn't gone through the 524G trust and channeling injunction. The language specifically says, in considering whether an asbestos claim should be discharged, we look at this. So I read that as, we're not saying this is the rule for everybody going forward. We're saying in this particular case, when it goes back – When I look at the language, that does not necessarily mean that the Van Brunt's claims were discharged by the plan of the organization. Any application of the test to be applied cannot be divorced from fundamental principles of due process. I completely agree. I completely agree that due process is an inquiry. I'm just saying I don't agree that that last paragraph in which the Grossman's – But those factors are not exhaustive. And it remains to be seen how broadly we will be reading that provision. I mean, it seems, as I said before, you know, the door closes and then does that due process notion – Right, we say it doesn't matter what they knew and then we go back and say it does matter what they knew. Yeah, so I'm not sure. But here, it would seem to me there are clear, there are due process implications. If the Court has no further questions. No, I have no further questions. Nothing further. Thank you. Just like to close by noting that the beginning of the Grossman's decision stated and recognized that the Court was competing en banc under the very unusual circumstances where the Court is overruling longstanding precedent. The adequacy of notice cannot be divorced from the context of the case. I believe this Court has recognized the due process, the very unique due process considerations that are at issue here. The Owens Corning in 2006 got what it bargained for in its plan of reorganization. What they're seeking here in terms of pressing for a discharge of these claims – Is there really anything else to add other than what we've been through? Pardon? Is there really anything else to add other than – No, Your Honor. All right. Thank you very much. Thank you. Thank you, Counsel. The case was well argued. We'll take it under advisement.